RAINTREE CORP. v. CITY OF CHARLOTTE

No. 8026SC354

(Filed 4 November 1980)

1. **Declaratory Judgment Act § 9– money judgment granted in declaratory judgment action – waiver of right to notice**

    In a declaratory judgment action in which plaintiff sought an interpretation of a contract for sewer services, since defendant stipulated as to

Raintree Corp. v. City of Charlotte

the exact amount of the "tapping privilege fees" collected by it and to the precise total amount of accumulated interest on the payments made under protest and did not object to the procedure of entering a judgment for money in the declaratory judgment proceeding, defendant waived the requirement of G.S. 1-259 that it be served with a petition and notice before the court would have authority to grant further relief.

**2. Municipal Corporations § 22.2– contract for sewer services– tapping privilege fee not permitted**

Where the stipulation made by the parties established that the contract of their predecessors in interest was to be subject to the then existing water and sewer policy as it related to the payment of sewer connection fees and not to the payment of any "tapping privilege fee," and the stipulations further demonstrated that the "tapping privilege fee" was not instituted until a different water and sewer policy was adopted four years later, the trial court could find by competent evidence that the contract did not allow for "tapping privilege fees" to be assessed by defendant against plaintiff.

**3. Municipal Corporations § 22.2– contract for sewer services -- assessment of tapping privilege fee not allowed – contract not ultra vires**

A contract for sewer services entered into by the parties' predecessors, which was interpreted by the trial court to prohibit assessment of "tapping privilege fees" against plaintiff, was not *ultra vires* and therefore unenforceable, since a water and sewer policy adopted by defendant in 1975 provided that "subdivisions developed solely with developer funds and donated to the city without cost are not subject to tapping privilege fees," and the parties stipulated that plaintiff's predecessor in interest constructed "at its sole expense" all the necessary sewerage facilities on its property and that defendant automatically became the owner and operator of those facilities upon ther completion.

**4. Declaratory Judgment Act § 9; Interest § 1– declaratory judgment action – contract for construction of sewer services – improper tapping privilege fee charged – award of interest proper**

In a declaratory judgment action in which plaintiff sought an interpretation of a contract for sewer services, the trial court properly awarded pre-judgment interest, since plaintiff made "tapping privilege fee" payments under protest, and defendant did not have authority to collect such sums.

APPEAL by defendant from *Ferrell, Judge*. Judgment entered 19 February 1980 in Superior Court, MECKLENBURG County. Heard in the Court of Appeals on 9 October 1980.

This is a declaratory judgment action in which plaintiff seeks an interpretation of a contract for sewer services dated 26 January 1971 between the Ervin Company, plaintiff's predecessor in interest, and Mecklenburg County, defendant's predeces-

Raintree Corp. v. City of Charlotte

sor in interest. The parties stipulated that the issues to be resolved by the court were as follows:

(a) May the City properly charge Raintree Corp. a higher sewer service connection fee than was in effect and being charged on January 26, 1971?

(b) May the City properly charge Raintree Corp. the tapping privilege fee prescribed for the first time by its May, 1975 Water and Sewer Policy?

The parties further stipulated, among other things, as follows:

(1) Defendant, through its department the Charlotte-Mecklenburg Utility Department, has the responsibility for providing sanitary sewer services in Mecklenburg County and has assumed the contract in question in carrying out that responsibility; (2) in accordance with the terms of the contract, the Ervin Company "at its sole expense" constructed all necessary sewer facilities within the boundaries of the subdivision Ervin was developing, and "the facilities are now in operation, being operated, maintained, and owned by the defendant"; (3) under paragraph 8 of the contract, the sewer facilities constructed were subject to the then-existing sewer policies of Mecklenburg County "concerning sewer connections as they relate to payment of tap fees"; (4) "[t]he only sewer fee established and in effect on January 26, 1971 was a service connection charge to connect a sewer lateral into the street main, . . ." said charge designed to cover the cost of construction to connect the lateral to the main; (5) on 19 May 1975 defendant adopted a new water and sewer policy, still in effect, which provided for two types of fees, one being a sewer service connection fee for connecting a sewer lateral to a sewer main, and the other being a "tapping privilege fee" for financing sewer extensions for new development; (6) the sewer service connection fee under this new policy was greater than the amount of the fee in effect when the contract in question was entered; (7) plaintiff had paid and was still paying the increased sewer service connection fee and the tapping privilege under protest; (8) the total sum of tapping privilege fee payments by plaintiff from 15 August 1977 to 19 November 1979 was $19,920; and (9) "if interest were to be computed thereon at the rate of six percent (6%) per annum from the date of each payment through February 15, 1980, the amount of accrued interest would be $1,799.81."

The trial judge made findings which in effect incorporated the stipulations and concluded as follows:

1. Under the Sewer Contract the City may charge Raintree Corp. a higher sewer service connection fee, based generally on the construction costs of connecting a lateral line into a street main, than was in effect and being charged on January 26, 1971 because paragraph 8 on page 3 of the Sewer Contract provides that the developer will follow established policy with regard to sewer service connection fees.

2. Under the Sewer Contract the City may not charge Raintree Corp. the tapping privilege fee prescribed for the first time by its May, 1975 Water and Sewer Extension Policy because paragraph 1 on page 2 of the Sewer Contract provides that the Raintree sewer system will be subject to the January 26, 1971 County sewer policy.

3. While there are certain obligations to which a municipality cannot by contract bind itself, the obligations undertaken by the County in the Sewer Contract are valid and enforceable as to the County and its successor, the City.

4. Between August 15, 1977 and November 19, 1979 Raintree Corp., under protest, paid the City tapping privilege fees in the amount of $19,920.00, to which the City is not entitled and which the City is obligated to refund to Raintree Corp. with interest.

From a judgment upholding defendant's right to charge a higher sewer service connection fee, prohibiting defendant from charging plaintiff tapping privilege fees, and allowing plaintiff to recover "all tapping privilege fees paid in the amount of $19,920.00 plus interest in the amount of $1,799.81 ..." and costs, defendant appealed.

*Horack, Talley, Pharr, and Lowndes, by Robert C. Stephens and Thomas J. Ashcraft, for the plaintiff appellee.*

*City Attorney Henry W. Underhill, Jr., by Assistant City Attorneys Richard D. Boner and David M. Smith, for the defendant appellant.*

HEDRICK, Judge.

Raintree Corp. v. City of Charlotte

[1] We note at the outset that this is a declaratory judgment proceeding wherein the court entered a judgment that not only declared the rights of the parties under the contract, but also entered a monetary judgment for plaintiff. While neither party has raised the question of the propriety of a monetary judgment in a declaratory judgment proceeding, we deem it proper to point out that G.S. § 1-259 provides that upon petition and notice, the court can grant further relief "whenever necessary or proper" in a declaratory judgment proceeding, and such relief can be a judgment for money. 22 Am. Jur. 2d, Declaratory Judgments § 100; 26 C.J.S. Declaratory Judgments § 162. Since defendant stipulated as to the exact amount of the "tapping privilege fees" collected by defendant, and to the precise total amount of accumulated interest on the payments made under protest, and did not object to the procedure of entering a judgment for money in the declaratory judgment proceeding, we hold that defendant waived the requirement of G.S. § 1-259 that it be served with a petition and notice before the court would have authority to grant further relief.

[2] By his first assignment of error, defendant argues that the trial court's determination that the contract did not permit the city to charge plaintiff with a "tapping privilege fee" is not supported by the record. We disagree. The findings of the trial court are conclusive and binding on appeal when supported by competent evidence. *Seders v. Powell*, 298 N.C. 453, 259 S.E. 2d 544 (1979); *Williams v. Pilot Life Insurance Co.*, 288 N.C. 338, 218 S.E. 2d 368 (1975).

The stipulations made by the parties in the present case establish that the contract was to be subject to the then-existing water and sewer policy as it related to the payment of sewer connection fees, and not to the payment of any "tapping privilege fee." The stipulations further demonstrate that the "tapping privilege fee" was not instituted until a different water and sewer policy was adopted in 1975. Based on these stipulations, the trial court could find by competent evidence that the contract did not allow for "tapping privilege fees" to be assessed against plaintiff. This assignment of error is meritless.

[3] Defendant next argues by his second and fourth assignments of error that the trial court's interpretation of the con-

tract has the "primary effect of limiting the County's (and City's) authority to set fees *vis a vis* Raintree Corp.", and that therefore the contract in the present case is *ultra vires*, and cannot be enforced by plaintiff. We do not agree. G.S. § 153-284, as it was at the time the contract was entered, provided in pertinent part as follows:

> The board of commissioners of any county is hereby authorized to:
>
> (1) Acquire, lease as lessor or lessee, construct, reconstruct, improve, extend, enlarge, equip, repair, maintain and operate any . . . sanitary sewerage system or parts thereof, either within or without the boundaries of the county, . . . and
>
> (2) To make and enter into all contracts and agreements necessary or incidental to the execution of the powers herein provided, including the contracting or otherwise providing for the leasing, repairing, maintaining and operating of any such system or systems or parts thereof.

G.S. § 153-286, as it was at the time the contract was entered, provided in pertinent part as follows:

> The board of commissioners of any county may fix, and may revise from time to time, rents, rates, fees, and charges for the use of and for the services furnished or to be furnished by any such [sanitary sewerage] system or systems. . . .

Although there is no question that a county or municipality has the power to enter contracts, if the county or municipality enters a contract which restricts it in the performance of its governmental function or in the exercise of its legislative authority, such a contract is *ultra vires* and is of no legal effect. *Bessemer Improvement Co. v. City of Greensboro*, 247 N.C. 549, 101 S.E. 2d 336 (1958); *Madry v. Town of Scotland Neck*, 214 N.C. 461, 199 S.E. 618 (1938); *Rockingham Square Shopping Center, Inc. v. Town of Madison*, 45 N.C. App. 249, 262 S.E. 2d 705 (1980).

In the present case, the trial judge's interpretation of the contract does not restrict the county or the city in the exercise of its legislative authority, since defendant chose in its discretion not to subject developers in situations similar to plaintiff to

Raintree Corp. v. City of Charlotte

the assessment of "tapping privilege fees." In the water and sewer policy adopted by defendant on 19 May 1975, the following appears under a section entitled "Special Considerations": "F. ... Subdivisions developed solely with developer funds and donated to the city without cost are not subject to tapping privilege fees. ..." The parties stipulated, and the court found, that the Ervin Company, plaintiff's predecessor in interest, constructed "at its sole expense" all the necessary sewerage facilities on its property, and that defendant is now the owner and operator of those facilities. Furthermore, the contract in question indicated that upon completion of the facilities, the county's ownership of them was "automatic," and no provision was made for any compensation to plaintiff. We therefore hold that the contract in question was not *ultra vires*, and was enforceable as interpreted by the trial judge. These assignments of error are without merit.

**[4]** Defendant next contends, based upon his fifth, sixth, and seventh assignments of error, that the trial judge erred "in awarding interest in the amount of $1,799.81 to Raintree Corp." Essentially, defendant argues that pre-judgment interest is not recoverable on monetary judgments in declaratory judgment proceedings, that the facts of the case do not justify an award of such interest, and that there are no findings or conclusions setting forth the grounds for the award of such interest. We disagree. While we have found no cases in this jurisdiction directly dealing with an award of interest as part of supplemental relief in a declaratory judgment proceeding, other jurisdictions have allowed such an award. *See, e.g., National Fire Insurance Co. of Hartford v. Board of Public Instruction of Madison County, Florida,* 239 F. 2d 370 (5th Cir. 1956); *Fairchild Stratos Corp. v. Siegler Corp.,* 225 F. Supp. 135 (D.C. Md. 1963); *New Haven Water Co. v. City of New Haven,* 40 A. 2d 763, 131 Conn. 456 (1944). Also, since the North Carolina Declaratory Judgment Act is to be liberally construed, G.S. § 1-264; *York v. Newman,* 2 N.C. App. 484, 163 S.E. 2d 282 (1968), we are reluctant to disapprove of the trial judge's grant of supplemental relief in this case. Moreover, there are many analogous situations under North Carolina law in which a party can recover pre-judgment interest on moneys found to have been paid to and improperly held by another party, the most notable examples being actions for money had and received, *see Dean v.*

*Mattox*, 250 N.C. 246, 108 S.E. 2d 541 (1959), and action by tax-payers seeking refunds for property taxes that are found to be unlawful, *see* G.S. § 105-381(d). Since, under the circumstances of this case, plaintiff has made the "tapping privilege fee" payments under protest, and defendant does not have authority to collect such sums, we hold that the court properly awarded pre-judgment interest.

We further hold that the stipulations, and the findings and conclusions based on those stipulations, support the award of interest. These assignments of error have no merit.

Affirmed.

Judges MARTIN (Robert M.) and MARTIN (Harry C.) concur.