Lockerman v. S. River Elec. Membership Corp., 2015 NCBC 57.

STATE OF NORTH CAROLINA

COUNTY OF SAMPSON

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
11 CVS 152

TED B. LOCKERMAN,
ADMINISTRATOR D.B.N. OF THE
ESTATES OF ELLEN DUDLEY SPELL,
DECEASED, And SULIE DANIELS
SPELL, DECEASED,
     On Behalf of the Estates and On
     Behalf of All Others Similarly
     Situated,

              Plaintiff,

     v.

SOUTH RIVER ELECTRIC
MEMBERSHIP CORPORATION, a
North Carolina Electric Membership
Cooperative,

              Defendant.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

**OPINION & FINAL JUDGMENT ON
DEFENDANT'S THIRD MOTION
FOR SUMMARY JUDGMENT &
PLAINTIFF'S MOTION TO STRIKE
AFFIDAVITS & REPLY BRIEF**

{1}     THIS MATTER is before the Court on Defendant's Third Motion for Summary Judgment ("Motion for Summary Judgment") and the corresponding Plaintiff's Motion to Strike Affidavits and Reply Brief ("Motion to Strike") (collectively, the "Motions"). For the reasons expressed below, the Motion for Summary Judgment is GRANTED. The Motion to Strike is DENIED.

     *Stevens Martin Vaughn & Tadych, PLLC by K. Matthew Vaughn and Michael J. Tadych and Andrew M. Jackson, Attorney by Andrew M. Jackson for Plaintiff Ted B. Lockerman, Administrator D.B.N. of the Estates of Ellen Dudley Spell, Deceased, and Sulie Daniels Spell, Deceased, on Behalf of the Estates and on Behalf of All Others Similarly Situated.*

     *Smith and Christensen, LLP by Aaron M. Christensen and W. Britton Smith, Jr. for Defendant.*

Gale, Chief Judge.

## I.   INTRODUCTION

{2}   Plaintiff seeks to represent a class consisting of the estates of deceased members of South River Electric Membership Corporation ("SREMC") whose capital credits with SREMC were retired using a discount rate.  Ruling upon SREMC's earlier summary judgment motions, the Court held that SREMC did not owe the estates a fiduciary duty and that it had the legal authority to adopt the program by which it would retire capital credits at a discounted rate.  The Court did not foreclose potential claims for retirements that did not comply with the terms of the program as SREMC had adopted it.  SREMC's current Motion for Summary Judgment rests on two primary assertions:  (1) the claims related to any capital account retirements occurring more than three years prior to the filing of the Class Action Complaint are time-barred, except the claim of unfair and deceptive trade practices ("UDTP"), which is time-barred for all capital account retirements occurring more than four years prior to the filing of the Class Action Complaint, such that all claims brought on behalf of the Estate of Ellen Dudley Spell are time-barred; and (2) the claims brought on behalf of the Estate of Sulie Daniels Spell have no merit, although brought within the applicable statutes of limitations.

## II.   THE PARTIES

{3}   Plaintiff Ted B. Lockerman is Administrator *de bonis non* for the estates of Ellen Dudley Spell ("Ellen Estate") and Sulie Daniels Spell ("Sulie Estate") (collectively, the "Estates"), and seeks to represent a class of similarly situated estates.

{4}   Ellen Dudley Spell was a citizen and resident of Sampson County, North Carolina and a member of SREMC at the time of her death on October 3, 2002.

{5}   Sulie Daniels Spell was also a citizen and resident of Sampson County, North Carolina and a member of SREMC at the time of her death on April 28, 2009.

{6}     Defendant SREMC is a North Carolina Electric Membership Cooperative.

## III.    PROCEDURAL HISTORY

{7}     Plaintiff filed his Class Action Complaint on February 9, 2011. Plaintiff brings the action as the representative of two estates: (1) the Estate of Ellen Dudley Spell, Deceased; and (2) the Estate of Sulie Daniels Spell, Deceased. Plaintiff asserted the following causes of action: (1) declaratory judgment, (2) breach of fiduciary duty, (3) conversion, (4) unjust enrichment, (5) *ultra vires* corporate acts, (6) *intra vires* corporate acts, (7) unfair and deceptive trade practices ("UDTP"), and (8) breach of contract.

{8}     This matter was designated a complex business case on March 14, 2011, and assigned to the undersigned on March 16, 2011.

{9}     On May 13, 2011, Plaintiff voluntarily dismissed his fifth and sixth causes of action for *ultra vires* and *intra vires* corporate acts, respectively.

{10}    Defendant filed its Affirmative Defenses, Answer and Counterclaims on November 4, 2011, to which Plaintiff replied on November 23, 2011.

{11}    Pursuant to a Phase One Case Management Order entered on October 21, 2011, the parties submitted their Phase I Joint Stipulations of Fact on November 23, 2011.  As required by that Order, SREMC submitted two summary judgment motions on  December 27, 2011, presenting two limited questions: (1) "whether cooperatives may lawfully discount special retirements to the estates of deceased former members" in North Carolina (Def.'s First Rule 56 Mot. Summ. J. 1); and (2) "whether cooperatives owe fiduciary duties to the estates of deceased former members with respect to the timing and procedures for retiring capital credits" (Def.'s Second Rule 56 Mot. Summ. J. 1).

{12}    On August 8, 2012, the Court entered an Order granting SREMC's two motions, holding that SREMC had the authority to adopt a program for early retirement of member capital credits on a discounted basis, and that SREMC owed its members no fiduciary duty in connection with the capital accounts.  Plaintiff

appealed the Court's Order. The North Carolina Court of Appeals dismissed the appeal as interlocutory. At this time, the following claims have not yet been ruled upon: Claim 1—declaratory judgment; Claim 3— conversion; Claim 4—unjust enrichment; Claim 7—UDTP; and Claim 9—breach of contract.

{13} The Court allowed limited discovery to develop a record to allow consideration of additional controlling issues of law.

{14} Defendant filed its Third Motion for Summary Judgment on January 9, 2014.

{15} Plaintiff filed his Motion to Strike on September 4, 2014.

{16} The Motions have been fully briefed and argued and are ripe for ruling.

## IV. FACTS

{17} The Court does not make findings of fact when ruling on a motion for summary judgment. *See Hyde Ins. Agency, Inc. v. Dixie Leasing Corp.*, 26 N.C. App. 138, 142, 215 S.E.2d 162, 164–65 (1975). "It is, however, appropriate for the court to describe the undisputed facts or lack of facts the record discloses in order to provide context for the court's ruling on the motion." *BDM Invs. v. Lenhil, Inc.*, 2014 NCBC LEXIS 32, at * 3 (N.C. Super. Ct. July 21, 2014). The Court believes the following facts to be uncontested.[1]

### A. SREMC's Capital Credit Program

{18} SREMC is required by its charter to exist for the benefit of its members as a not-for-profit cooperative. As a cooperative, SREMC requires that its members furnish capital to finance SREMC's business. Any amounts received that exceed operating costs and expenses are credited to capital accounts in favor of each member on an annual basis. There is no actual cash account maintained on a

---

[1] The parties have stipulated to many of the relevant facts upon which SREMC bases its statute of limitations defense. (*See* Phase I Stipulations of Fact ("Phase I Stips.").) Portions of SREMC's affidavits and reply brief were submitted to support an argument that Plaintiff's claims have been mooted by SREMC's voluntary payment of some capital credit-related errors, while SREMC continues to contest its liability for those events. The Court has not considered these portions of the affidavits or the reply brief to reach its conclusions.

member-by-member basis, but SREMC's bylaws provide that "Capital Credits shall be treated as though the Cooperative paid the Capital Credit amounts to each Member in cash pursuant to a legal obligation, and each Member furnished the Cooperative Capital in the corresponding Capital Credit amounts." (Phase I Stipulations of Fact ("Phase I Stips.") Ex. I § 7.02(A).) At a member's death, any property right in the capital credits belongs to the deceased member's estate.

{19} SREMC is obligated to return accumulated capital credits to its members and former members, subject to provisions of its bylaws. SREMC's policy is to make capital credit retirements on a dollar-for-dollar basis nineteen years after those credits are allocated to a member. SREMC is not required to and does not pay or allocate accrued interest to capital accounts. Prior to 2001, SREMC did not discount retirements of capital credits occurring before the nineteen-year expiration.

{20} In 2001, SREMC adopted bylaws that established a program to allow for the optional retirement of a deceased member's capital account on a discounted basis. At first, SREMC considered a fixed discount rate of 6 percent, but when actually implemented, the bylaws provided for a program using a variable discount rate.

{21} If an SREMC member passed away, SREMC retired the capital credits at a discounted rate to any patron upon written request from the legal representative of the estate. The SREMC Board of Directors has discretion to prevent the payout if it determines that the payout would adversely affect SREMC's finances. The amount paid during early capital credit retirement is equal to the full amount of a member's accrued capital credits, discounted by a discount rate compounded by the number of years left before natural retirement of the credits. With its 2001 bylaws, SREMC began using *The Wall Street Journal* prime rate as of December 31st of the year prior to the discounting. Once discounted, any payment due to the deceased member's estate would be offset by any unpaid services bill and the remainder paid to the member's estate.

{22}    SREMC developed a form for use when applying for early retirement of a deceased member's capital credit.  Although the form changed periodically, the following language remained virtually unchanged as it pertained to the Estates' applications:

> I do hereby request that South River Electric Membership Corporation refund the aforesaid estate all credits accruing to the account of the deceased growing out of or in connection with the patronage capital which the deceased furnished to the Cooperative through the last year for which such credits have been allocated.  I understand that this Application represents a request for an early retirement of the stated capital credits and that a discount factor (approved by the Cooperative's Board of Directors) will apply to this retirement and refund.  The present discount factor is ____%.

(Phase I Stips. Exs. A, D.)

{23}    Although the typewritten portion of the form makes clear that a discount factor would be employed, in many instances SREMC staff would not actually fill in the discount rate until the signed form was returned.  Although the information was available upon request, the representative of the deceased member's estate would not necessarily be given the underlying calculation showing the accrued capital credit, the discount rate, the credit remaining after discounting, and the offset, if any, made against an unpaid services bill.  The representative would only receive the final, discounted amount upon receiving a check in the mail.

{24}    The early retirement program is entirely voluntary.  Estates of deceased members are not required to request or accept early retirement of the deceased member's capital credit.

{25}    SREMC did not make a general announcement or mailing about the discounting program until 2011.  The bylaws remained available upon request at all times.

{26}    SREMC's 1994 bylaws were in effect until June 4, 2001, when changes were made to section 7.03 that added provisions by which capital credits were to be discounted.  SREMC did not publicize its 2001 changes.

{27}    After the June 4, 2001, update, the bylaws provided the following:

The Board shall determine the method, basis, priority and order of retiring and refunding Capital Credits and Affiliated Capital Credits.

Discounted Capital Credit retirements shall be calculated based on a discount rate equal to the Wall Street Journal Prime Rate as of December 31 of each applicable year and a discount period equal to the number of years of patronage capital then outstanding. All amounts of capital allocated to members but retained by the Cooperative after retirements on a discounted basis shall be considered a contribution of capital to the Cooperative and part of the "net savings" of the Cooperative. "Net savings" of the Cooperative will not be reallocated as excess margins to any former or current Cooperative members.

(Phase I Stips. Ex. H § 7.03.)

{28} SREMC admits that it used the incorrect discount rate until December 31, 2002, by using a fixed, 6 percent rate rather than the variable rate as provided by the June 2001 bylaws. (Hardy Aff. ¶ 13.)

## B. Ellen Dudley Spell

{29} Ellen Dudley Spell ("Ellen") died intestate on October 3, 2002, during which time SREMC held allocated and unretired capital credits in her name in the amount of $695.22.

{30} Ellen's daughter, Linda S. Turlington ("Turlington"), applied for these capital credits on October 22, 2002, using the application form prepared by SREMC. She signed the form as the administrator of the Ellen Estate.

{31} At the time Turlington signed the form, the section at the bottom of the form entitled "FOR OFFICE USE ONLY—Summary of Capital Credits Due Estate" was not filled in. The application form Turlington signed listed the discount rate as 6 percent.

{32} *The Wall Street Journal* prime rate for the year ending December 31, 2001, was 4.75 percent. (Phase I Stips. Ex. B.) Using a 6 percent discount rate rather than a 4.75 percent rate is unfavorable to the member and favorable to SREMC.

{33} Ellen's capital credits were discounted at the rate of 6 percent, reducing her balance by $398.66, leaving $296.56 to be paid to the Spell Estate.

{34}    After a reduction of $80.77 for an outstanding balance on Ellen's account, SREMC paid the Ellen Estate $215.79 and accrued $398.66 to net savings. The estate would have received a larger payment if the discount had been calculated using a 4.75 percent rate.

### C.  Sulie Daniels Spell

{35}    Sulie Daniels Spell ("Sulie") died intestate on April 28, 2009, during which time SREMC held allocated and unretired capital credits in her name in the amount of $221.45.

{36}    Sulie's son, James B. Spell ("James"), approached the Sampson County Clerk of Court, who assisted him in applying for Sulie's capital credit refund.  He subsequently applied for Sulie's capital credits using the same application form as Turlington, which SREMC prepared and mailed to him.

{37}    James never spoke to anyone from SREMC.

{38}    At the time James signed the form, the information at the bottom of the application form entitled "FOR OFFICE USE ONLY—Summary of Capital Credits Due Estate" was not filled in.  SREMC did not fill in the discount factor that it used to discount the Sulie Estate's capital credits until after it received the signed contract back from James.  SREMC discounted the capital credits at 3.25 percent.

{39}    *The Wall Street Journal* prime rate was 3.25 percent on the December 31 preceding James's application.  Thus, the rate used to discount the Sulie Estate's credits complied with the 2001 bylaws.

{40}    On the form, James checked the box to indicate that he was Sulie's son and the executor of the Sulie Estate.  James later testified that he was not the personal representative of the Sulie Estate at the time he signed the form.  There is no evidence that SREMC asked James or the Sulie Estate to submit proof of authority to make a claim on the estate's behalf.

{41}    SREMC applied the discount to Sulie's capital credits, which reduced the account by $94.79 and left $126.76 to be paid to the Spell Estate.  SREMC paid $94.00 to the Sampson County Clerk of Court on July 30, 2009, as a refund of

Sulie's deposit, and after board approval of the special retirement paid an additional $126.76 to the Sampson County Clerk of Court as a refund of Sulie's capital credits on August 5, 2009. SREMC accrued $94.79 to net savings. No payment for capital credits was made directly to James.

{42}     Sulie was also the sole devisee of her husband's estate. James Henry Spell died testate on December 11, 2003, and the discounted amount of his capital credits were paid to the Sampson County Clerk of Court February 10, 2004.

{43}     There has been no claim that the discount rate was different than that required by the bylaws.

### D. Lillie M. Faircloth McLelland

{44}     Plaintiff makes no claim on behalf of the Lillie M. Faircloth McLelland Estate ("McLelland Estate"). Plaintiff instead claims that the McLelland Estate received unequal treatment with respect to the discounting of its capital credits.

{45}     Lillie M. Faircloth McLelland ("McLelland") died testate on December 8, 1999, before SREMC began its discounting program on June 4, 2001. SREMC held $1,117.17 in unretired capital credits in McLelland's name at the time of her death.

{46}     McLelland's daughter secured payment to the McLelland Estate of McLelland's capital credits, without any discounting. SREMC's CEO stated that SREMC's agreement not to discount the McLelland Estate's capital credits was done for "PR reasons." (Davis Depo. 50:1 – :10.)

## V.     MOTION TO STRIKE

{47}     Plaintiff's Motion to Strike alleges that SREMC's reply and attached affidavits are improper because (1) the Spears and Hardy affidavits were untimely filed, (2) judicial estoppel bars SREMC's reliance on the new affidavits, and (3) the Spears and Hardy affidavits do not contain competent, relevant evidence. (Pl.'s Mot. Strike Affs. & Reply Br. 1–2.) Plaintiff argues that, because SREMC's reply relies on the allegedly improper affidavits, it too should be stricken. Plaintiff's

primary challenges are to the affiants' ability to testify as to any SREMC transactions prior to their employment and to their discussion of SREMC's voluntary decision to correct any past retirements using the proper discount rate under SREMC's 2001 bylaws.

{48}    SREMC contends, *inter alia*, that the affidavits were timely filed as supplemental affidavits under North Carolina Rule of Civil Procedure ("Rule(s)") 56(e), that judicial estoppel does not bar the affidavits because it never agreed to limit its own discovery with relation to its Motion for Summary Judgment, and that the Spears and Hardy affidavits contain competent and relevant evidence.

{49}    Rule 56(e) requires that affidavits set forth facts that would be admissible in evidence, and that the affiant is competent to testify to the matters contained in the affidavit.  N.C. R. Civ. P. 56(e).  If the facts provided in an affidavit are not admissible into evidence, the Court may not consider them on summary judgment.  *Strickland v. Doe*, 156 N.C. App. 292, 295–96, 577 S.E.2d 124, 128–29 (2003).

{50}    The Court has not considered any information in connection with SREMC's voluntary corrective payments.  Further, the Court has not considered any reference to the personal belief of the affiants, considering that both affiants began their employ at SREMC after the time periods relevant to the Motion for Summary Judgment.  *See* N.C. R. Evid. 401 ("'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."); N.C. R. Evid. 402 ("Evidence which is not relevant is not admissible.").  Where the Court has referenced certain information from the affidavits that is consistent with the Joint Stipulation of Facts, it will note those references.

{51}    Plaintiff's Motion to Strike the affidavits or reply brief in their entirety is DENIED.

# VI.   MOTION FOR SUMMARY JUDGMENT

## A. Standard of Review

{52}   Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." N.C. R. Civ. P. 56(c). In ruling on a summary judgment motion, the Court must consider the evidence in the light most favorable to the nonmovant. *Barger v. McCoy Hillard & Parks*, 346 N.C. 650, 662, 488 S.E.2d 215, 221 (1997).

{53}   The Court first addresses whether SREMC is entitled to have untimely claims dismissed under this standard, and concludes that the Ellen Estate's claims are untimely. The Court then addresses whether SREMC is entitled to judgment on the merits of the Sulie Estate's claims, which were brought within the applicable limitations periods.

## B. Claims by the Ellen Estate[2]

{54}   SREMC challenges all claims by the Ellen Estate as time-barred by the applicable statute of limitations. The Ellen Estate contends that application of either the demand and refusal doctrine or the discovery rule should save its claims, but even if not, SREMC should be equitably estopped from relying on a statute of limitations defense. Having concluded that SREMC is not estopped from relying on a statute of limitations defense, and that all claims by the Ellen Estate are time-barred, the Court need not further address the underlying merits of the claims.[3]

---

[2] Plaintiff makes a generalized statement that the evidence regarding other estates should support a finding that SREMC had a pattern of using its standardized form without filling in the applicable discount rate or capital credit balances before and after discounting, offsetting capital credits against unpaid service bills before retiring capital credits, and not providing additional information unless requested. Plaintiff contends that this evidence indicates a pattern of misrepresentation and deceit and supports the Estates' various claims for breach of contract, unjust enrichment, and UDTP.

[3] To the extent that the Sulie Estate makes any claims derived from Sulie's status as the sole devisee of her husband's property, those claims are also properly analyzed under the same statute of limitations analysis that governs claims by the Ellen Estate. James Henry Spell died on December 11, 2003, and his capital credits were paid on February 10, 2004.

{55}    SREMC states its general position on the statute of limitations as follows: "Plaintiffs filed the Complaint on February 9, 2011.  Based on this filing date, all putative causes of action for conversion, unjust enrichment based on conversion, and breach of contract, are time barred if those actions did not accrue before February 9, 2008." (Mem. Supp. Def.'s Third Mot. Summ. J. ("Def.'s Mem.") 6.)

{56}    The Court has already found that "SREMC's liability, if any, is then in the nature of contract, a breach of which, depending upon proof, may have been accompanied by factual misrepresentations." *Lockerman v. S. River Elec. Membership Corp.*, 2012 NCBC LEXIS 47, at *24 (N.C. Super. Ct. Aug. 8, 2012).[4]

### 1.  Conversion

{57}    SREMC alleges that the Ellen Estate's claim for conversion accrued in December 2002, and thus is time-barred by the three-year statute of limitations.

{58}    In response, Plaintiff claims that SREMC had ongoing, lawful possession of Ellen's capital credits every year that they were paid, and that because possession "did not change at the time of the conversion," the statute of limitations did not begin to run until there was a demand and refusal.  (Pl.'s Br. Opp. Def.'s Third Mot. Summ. J. ("Pl.'s Br.") 14.)  Plaintiff then argues that the conversion claim accrued upon the filing of the Class Action Complaint on February 14, 2011, and thus is not time-barred by the three-year statute of limitations.

{59}    The statute of limitations for claims of conversion, unjust enrichment, and breach of contract is three years.  N.C. Gen. Stat. §§ 1-52(1), (4) (2014).  Therefore, the question is whether Plaintiff's claims accrued more than three years prior to the filing of the Class Action Complaint on February 9, 2011.

---

[4] The Court also notes that, although not controlling, in dismissing Plaintiff's appeal of the Court's Order on Defendant's First and Second Motions for Summary Judgment, the North Carolina Court of Appeals noted that "some plaintiffs may not have a continued interest in the case since their remaining claims are barred by the statute of limitations." *Lockerman v. S. River Elec. Membership Corp.*, No. COA12-1450, 2013 N.C. App. LEXIS 787, at *9 (N.C. Ct. App. Aug. 6, 2013).

{60}  A claim for conversion requires "(1) an unauthorized assumption and exercise of right of ownership over property belonging to another and (2) a wrongful deprivation of it by the owner, regardless of the subsequent application of the converted property." *N.C. State Bar v. Gilbert*, 189 N.C. App. 320, 324, 663 S.E.2d 1, 4 (2008).  Typically, a claim for conversion accrues when "some act is done which is a denial or violation of the plaintiff's dominion over or rights in the property." *Bartlett Milling Co., L.P. v. Walnut Grove Auction & Realty Co., Inc.*, 192 N.C. App. 74, 86, 665 S.E.2d 478, 489 (2008) (quoting *Lake Mary Ltd. P'ship. v. Johnston*, 145 N.C. App. 525, 532, 551 S.E.2d 546, 552 (2001)).  However, there is an exception to this rule if the person has lawfully obtained possession. *Hoch v. Young*, 63 N.C. App. 480, 483, 305 S.E.2d 201, 203 (1983).  In that event, the true owner must demand return of the goods and subsequently receive an absolute refusal to surrender them. *Id.*

{61}  Plaintiff concedes that SREMC was lawfully in possession of the Ellen Estate's capital credits.  Therefore, Plaintiff contends, to constitute conversion, the Ellen Estate must have demanded the return of the credits and SREMC must have provided an absolute refusal to surrender them.  Turlington applied for a refund of Ellen's capital credits on behalf of the Ellen Estate on October 22, 2002.  SREMC discounted Ellen's capital credit balance and returned the discounted amount of Ellen's capital credits on December 9, 2002,[5] accruing the discount to net savings.  Turlington made no further request at that time for SREMC to refund the amount it retained due to the discounting.

{62}  Construing the record in the light most favorable to Plaintiff, the Court has unsuccessfully struggled to find any evidentiary basis to conclude that the Ellen Estate's claim for conversion, if any, did not accrue in 2002.  Although not necessary to its ruling, the Court is not persuaded that the Class Action Complaint can constitute the "demand" upon which the doctrine of demand and refusal can rest.

---

[5] SREMC deducted $80.77 from the capital credit account to cover the unpaid balance on Ellen's account.  Unaware of this, the Ellen Estate also paid SREMC that amount, which was subsequently returned to it as a refund by SREMC on December 6, 2002.

{63}     The Court concludes that Plaintiff's claim for conversion accrued more than three years prior to the filing of the Class Action Complaint, and that any demand and refusal was made in 2002.  The claim of conversion by the Ellen Estate is barred by the statute of limitations.

### 2.  Unjust Enrichment, UDTP, and Breach of Contract

{64}     SREMC argues that the Ellen Estate's claims for unjust enrichment and breach of contract rest on the same premise as the conversion claim, that each accrued in December 2002, and that each are barred by a three-year statute of limitations.  SREMC contends that Ellen Estate's UDTP claim, arising from the same factual predicate, is likewise barred, but by a four-year statute of limitations.

{65}     Plaintiff contends that the Ellen Estate's unjust enrichment and UDTP claims are premised on fraud or mutual mistake and are governed by the discovery rule provided by section 1-52(9) of the General Statutes, and therefore that the claims did not accrue "until the administrator discovers or, through the exercise of reasonable diligence, should have discovered the fraud or mistake." (Pl.'s Br. 14 (citing *Stratton v. Royal Bank of Can.*, 211 N.C. App. 78, 82, 712 S.E.2d 221, 226 (2011)).)

{66}     Although SREMC primarily contends that all claims are contract claims to which the discovery rule does not apply, SREMC further contends the discovery rule does not apply here because the Estates had the opportunity at the time their capital credits were retired to discover the facts that Plaintiff contends give rise to the claims.  Plaintiff contends that the Ellen Estate had no such opportunity because SREMC management intentionally and falsely represented the discount rate on the Ellen Estate's disclosure form, and that Turlington could not and did not discover the fraud or mistake until 2010, when she first saw the notice of the discount program posted on SREMC's website.[6]

---

[6] Plaintiff further argues that the application refers to a "discount factor," which is not adequate to disclose that SREMC would utilize a "discount rate."  The Court is not persuaded by the argument.

### a. Unjust Enrichment

{67} An unjust enrichment claim is governed by the three-year statute of limitations of N.C. Gen. Stat. § 1-52(1). *Housecalls Home Health Care, Inc. v. State*, 200 N.C. App. 66, 70, 682 S.E.2d 741, 744 (2009). For actions requesting relief on grounds of fraud or mistake, the statute of limitations begins to run at the time of discovery of the mistake by the aggrieved party—the so-called "discovery rule." N.C. Gen. Stat. § 1-52(9). Relief from a contract or quasi-contract on the grounds of mistake requires that mistake to be mutual. *Stratton*, 211 N.C. App. at 82, 712 S.E.2d at 227. Whether Plaintiff's unjust enrichment claim is predicated on fraud or mistake is critical because "[t]he discovery rule tolls the statute of limitations until the aggrieved party discovers or, through the exercise of reasonable diligence, should discover the mistake." *Id.* at 82, 712 S.E.2d at 226. "Whether a cause of action is barred by a statute of limitation is a mixed question of law and fact . . . ." *Little v. Rose*, 285 N.C. 724, 727, 208 S.E.2d 666, 668 (1974). In order to raise a genuine issue of material fact, a plaintiff "must allege specific facts upon which she intends to rely in establishing mutual mistake." *Best v. Ford Motor Co.*, 148 N.C. App. 42, 47, 557 S.E.2d 163, 166–67 (2001). "A unilateral mistake, unaccompanied by fraud, imposition, undue influence, or like oppressive circumstances, is not sufficient to avoid a contract . . . ." *Marriott Fin. Servs., Inc. v. Capitol Funds, Inc.*, 288 N.C. 122, 136, 217 S.E.2d 551, 560 (1975).

{68} The Court was unable to find any case that specifically applies the discovery rule to an unjust enrichment claim. Even assuming that Plaintiff is entitled to some extra-contractual claim, precedents in other contexts make clear that the Ellen Estate's unjust enrichment claim is time-barred.

{69} Plaintiff alleges only that SREMC and Turlington "could have been mistaken" about the discount rate and discounting procedures. (Pl.'s Br. 14.) Viewing the evidence in the light most favorable to Plaintiff, the record contains no evidence that SREMC's failure to apply the proper discount rate mandated by the bylaws was a mutual mistake, as opposed to a unilateral mistake or error by SREMC. Neither is there evidence that SREMC intended to conceal the proper

discount rate from the Ellen Estate. Plaintiff refers to testimony by Kellon Davis, the former SREMC employee in charge of capital credits, indicating that she could not explain where her manager, David Dozier, obtained the discount rate that he gave her to use while discounting capital credits. Plaintiff contends that Davis's ignorance of the source of the discount rate supports a finding that SREMC intended to defraud estates of the appropriate discounted value of their capital credits. The Court does not believe that this evidence supports the broad inferences of mistake or fraud that Plaintiff suggests. Thus, this evidence is not adequate to invoke the discovery rule so as to save an unjust enrichment claim from being time-barred.

{70} In sum, the Ellen Estate's claim for unjust enrichment is governed by the three-year statute of limitations under section 1-52(1). The claim accrued more than three years before the filing of the Class Action Complaint, and is time-barred.

### b. UDTP

{71} A UDTP claim must be brought within four years of the accrual of the cause of action. N.C. Gen. Stat. § 75-16.2 (2014). A UDTP claim based on fraud accrues only at the time the fraud is discovered, or should have been discovered with the exercise of reasonable diligence. *Trantham v. Michael L. Martin, Inc.*, 745 S.E.2d 327, 334 (N.C. Ct. App. 2013).

{72} The Court need not discuss the claim further. The discovery rule does not apply to the Ellen Estate's UDTP claim for the same reason it does not apply to its unjust enrichment claim. The Ellen Estate's UTDP claim is also time-barred.

### c. Breach of Contract

{73} Plaintiff's brief poses no opposition to SREMC's assertion that the Ellen Estate's breach of contract claim should be time-barred.[7] Claims based upon a contract are subject to a three-year statute of limitations, N.C. Gen. Stat. § 1-

---

[7] Plaintiff makes passing reference to its breach of contract claim in a heading in its opposition brief, but does not discuss it again with reference to the statute of limitations, in that section or otherwise. (Pl.'s Br. 13.)

52(1), and there is no basis to apply the discovery rule to this claim. The Ellen Estate's breach of contract claim is also time-barred.

### 3. Equitable Estoppel

{74}   Plaintiff argues that equitable estoppel bars SREMC's use of the statute of limitations as a defense to the claims of the Ellen Estate, citing *Friedland v. Gales*, 131 N.C. App. 802, 806, 509 S.E.2d 793, 796 (1998).

{75}   For equitable estoppel to bar SREMC's use of the statutes of limitations, Plaintiff must show "(1) conduct on the part of the party sought to be estopped which amounts to a false representation or concealment of material facts; (2) the intention that such conduct will be acted on by the other party; and (3) knowledge, actual or constructive, of the real facts." *Robinson v. Bridgestone/Firestone N. Am. Tire, LLC*, 209 N.C. App. 310, 319, 703 S.E.2d 883, 889 (2011) (quoting *Bryant v. Adams*, 116 N.C. App. 448, 460, 448 S.E.2d 832, 838 (1994)). Further, the party asserting estoppel must have "(1) a lack of knowledge and the means of knowledge as to the real facts in question; and (2) relied upon the conduct of the party sought to be estopped to his prejudice. *Id.* (quoting *Bryant*, 116 N.C. App. at 460, 448 S.E.2d at 838). In other words, "Plaintiff[] must show [that Turlington] lacked knowledge and the means of ascertaining the real facts and rightfully relied on [SREMC's] conduct to [her] detriment." *Deluca v. River Bluff Holdings II, LLC*, 2015 NCBC LEXIS 12, at *12 (N.C. Super. Ct. Jan. 28, 2015).

{76}   Plaintiff has submitted testimony that SREMC, via Kellon Davis, misrepresented to Turlington her options regarding the refunding of capital credits to the Ellen Estate. Plaintiff also alleges that, because Turlington was not a member, she could reasonably rely solely on the standard application form and Davis's statements and had no obligation to make further inquiry as to SREMC's bylaws or requirements of the discounting program. This position, of course, assumes that Turlington was not on notice of discounting by reason of the application and Davis's explanation. But, application of the estoppel doctrine is not limited to Turlington's knowledge; it also requires a basis to find that SREMC made

a misrepresentation or concealment of material facts on which it intended Turlington to rely.

{77} The Court has already found that, "[a]s to a claim that the Estates were foreclosed from knowing the details of the discounting program, the application discloses that the discount had been adopted by the SREMC board." *Lockerman*, 2012 NCBC LEXIS 47, at \*21. SREMC's bylaws are available to current members upon request at any time. The Court finds no evidence supporting a finding that SREMC affirmatively concealed facts regarding its discounting program. The fact that SREMC did not more broadly advertise its bylaw revisions at the time of enactment in 2001 does not lead to an inference that SREMC had the intent to conceal information, particularly given that involvement of the SREMC Board of Directors and the application of a discount factor are expressly disclosed on the application for early retirement of capital credits.

{78} Further, as an executor of the Ellen Estate, Turlington has a statutory duty to settle the estate. N.C. Gen. Stat. § 28A-13-2 (2014). Such a duty lends support to the argument that Turlington should investigate any contractual duties of which she is uncertain while acting on behalf of the Ellen Estate. There is no competent evidence either that SREMC intentionally thwarted Turlington's investigation or that, upon inquiry, she received fraudulent information that SREMC intended would preclude her from making a timely challenge to SREMC's discounting program.

{79} The Court finds no evidence upon which Plaintiff may invoke estoppel to preclude SREMC's use of the statute of limitations defense to bar the claims of the Ellen Estate.

## C. Claims by the Sulie Estate

{80} This Court has already ruled that remaining claims must be based in contract, "a breach of which, depending upon proof, may have been accompanied by factual misrepresentations." *Lockerman*, 2012 NCBC LEXIS 47, at \*24.

{81}   SREMC concedes that the Sulie Estate's claims are not time-barred by any statute of limitations, but asserts that the Sulie Estate's claims should be dismissed on their merits because the undisputed material facts demonstrate as a matter of law that the Sulie Estate is entitled to no recovery.  SREMC contends that no contract was breached because it complied with the contract when it discounted and refunded the Sulie Estate's capital credits using the proper discount rate required by SREMC's bylaws.  Plaintiff counters that SREMC did not comply because it retired the credits based on an application made by one who had no authority to make the request.

## 1. Conversion

{82}   Plaintiff contends that SREMC is liable in tort because "SREMC's failure to follow its own Bylaws Section 7.03 makes tortious the accrual of discounted capital credits to net savings of the cooperative." (Opp'n. Br. 20.) Plaintiff asserts that James Spell was not the Sulie Estate's legal representative and did not have any authority to bind it, and that SREMC was not entitled to rely on the fact that James checked the "Executor" box on the form requesting retirement of Sulie's capital credits.  However, even assuming this to be true, SREMC paid to the Sulie Estate the amounts calculated in accord with the discount rate specified by SREMC's bylaws, and the Sulie Estate accepted the discounted amount without protest.  Section 28A-25-6(e) of the General Statutes provides a release of indebtedness upon payment to the Clerk of Court.  Plaintiff contends that the release must be limited to the amount paid to the Sampson County Clerk of Court and does not extend to the amounts SREMC retained as net savings.

{83}   SREMC argues that the conversion claim asserts a right to intangible expectations, which are not subject to conversion claims. *See Gottfried v. Covington*, 2014 NCBC LEXIS 26, at *19 (N.C. Super. Ct. June 25, 2014).

{84}   "The tort of conversion requires (1) an unauthorized assumption and exercise of right of ownership over property belonging to another and (2) a wrongful deprivation of it by the owner, regardless of the subsequent application of the

converted property." *Gilbert*, 189 N.C. App. at 324, 663 S.E.2d at 4. Only goods and personal property, and not business opportunities and expectancy interests, are subject to a conversion claim. *Norman v. Nash Johnson & Sons' Farms, Inc.*, 140 N.C. App. 390, 414, 537 S.E.2d 248, 264 (2000); *Gottfried*, 2014 NCBC LEXIS 26, at *19. But, the Court concludes that a member's right to receive previously allocated capital credits is more than an expectancy interest. SREMC acknowledges that a decedent's accumulated capital credits become property of that member's estate. Further, SREMC has a legal obligation to return capital credits to its members, subject to its bylaws and the discretion of its Board of Directors, who may approve an early retirement of capital credits as long as it does not impair the financial condition of SREMC.

{85} Nevertheless, the Court concludes that no conversion claim arose when SREMC paid the discounted capital credits to the Sulie Estate upon James's application even if he was not the Sulie Estate's legal representative. Although James was not the legal representative, SREMC paid the discounted capital credits to the Sampson County Clerk of Court, and the release under section 28A-25-6(e), as further explained below, is effective to bar the claim.

{86} To the extent that the Sulie Estate has a claim for improper discounting, that claim arises in contract, not in tort.

## 2. Unjust Enrichment

{87} The Sulie Estate's unjust enrichment claim should be denied because the Estate's claim arises from an express contract.

{88} Plaintiff argues that, irrespective of the existence of express contracts that may govern the amount actually paid to the Sulie Estate, the Court may still award as unjust enrichment an amount equal to prejudgment interest on the retained capital credits, citing *Raintree Corp. v. City of Charlotte*, 49 N.C. App. 391, 397, 271 S.E.2d 524, 528 (1980).

{89} A claim for unjust enrichment is a claim in quasi-contract, or contract implied in law. *Booe v. Shadrick*, 322 N.C. 567, 570, 369 S.E.2d 554, 556 (1988). It

is well-settled law in North Carolina that, "[i]f there is a contract between the parties the contract governs the claim and the law will not imply a contract." *Id.*; *see also, e.g., Vetco Concrete Co. v. Troy Lumber Co.*, 256 N.C. 709, 713, 124 S.E.2d 905, 908 (1962) ("It is a well established principle that an express contract precludes an implied contract with reference to the same matter."); *Pritchett & Burch, PLLC v. Boyd*, 169 N.C. App. 118, 124, 609 S.E.2d 439, 443 (2005).

{90}     The Court has previously ruled that "SREMC's liability, if any, is then in the nature of contract." *Lockerman*, 2012 NCBC LEXIS 47, at *24. North Carolina courts have not addressed whether an electrical membership corporation's bylaws create *per se* contractual rights between the corporation and its members. *See Cape Hatteras Elec. Membership Corp. v. Stevenson*, 2015 NCBC LEXIS 37, at *14 (N.C. Super. Ct. Apr. 9, 2015). However, those bylaws can constitute an agreement if the parties agree to be bound by them. *Id.*; *see also Virmani v. Presbyterian Health Servs. Corp.*, 127 N.C. App. 71, 76–77, 488 S.E.2d 284, 287–88 (1997). Here, the Sulie Estate bases its claim upon either the application form prepared by SREMC and signed by James or on SREMC's bylaws, to which the Estates have agreed to be bound as a condition of their membership, thus creating express contractual relationships between the parties. Therefore, Plaintiff's claims are based on an express contract. A claim of unjust enrichment does not lie.

{91}     Plaintiff relies on *Raintree* to argue that this limitation does not serve to bar the Sulie Estate's claim for prejudgment interest on amounts SREMC retained as net savings. *See* 49 N.C. App. at 397, 271 S.E.2d at 528. *Raintree* involved a declaratory judgment claim, and in the course of reaching its ultimate holding, the North Carolina Court of Appeals stated that it was "reluctant to disapprove of the trial judge's grant of supplemental relief in this case" because the North Carolina Declaratory Judgment Act should be liberally construed regarding the award of prejudgment interest. *Id.* at 397, 271 S.E.2d at 528. The court of appeals also noted that prejudgment interest might be recovered in an action for moneys paid and improperly held by another party. *Id.* at 397–98, 271 S.E.2d at 528 (citing *Dean v. Mattox*, 250 N.C. 246, 108 S.E.2d 541 (1959); N.C. Gen. Stat. §

105-381(d) (2014)).  The court of appeals then concluded that, "[s]ince, under the circumstances of this case, plaintiff has made the . . . payments under protest, and defendant does not have authority to collect such sums, we hold that the [trial] court properly awarded pre-judgment interest."  *Id.* at 398, 271 S.E.2d at 528.

{92}     The Court concludes that *Raintree* does not rationally support Plaintiff's claim to allow an extra-contractual claim simply because SREMC retained some funds when implementing the express contract.  Unlike the contract in *Raintree*, the contract in this case expressly contemplated SREMC's retention of the residual after discounting the Sulie Estate's capital credits.  Further, applying a liberal declaratory judgment standard, the *Raintree* court limited its holding to the circumstances of that case, where the plaintiff made payments under protest and the defendant had no authority to collect the sums at issue.  This case shares none of those attributes.[8]

{93}     In sum, the Sulie Estate is not entitled to pursue an unjust enrichment claim.

### 3.  UDTP

{94}     SREMC claims that the Court's August 8, 2012, Order defeats any UDTP claim based on SREMC's discounting program to the extent that such a claim alleges any unfair, deceptive, or fraudulent practices with respect to the capital credit retirement program or is based on a breach of contract claim.  SREMC argues that, even if it failed to follow its own program guidelines, Plaintiff has failed to produce evidence of substantial aggravating circumstances surrounding any breach of contract to rise to the level of an actionable UDTP claim.  *See Eastover Ridge, LLC v. Metric Constructors Inc.*, 139 N.C. App. 360, 367–68, 533 S.E.2d 827, 832–33 (2000) (requiring substantial aggravating circumstances for a

---

[8] Further, the enrichment that SREMC arguably enjoyed was the time value of the money it retained.  To determine this enrichment to be unjust, the Court must also inquire as to the time value of the money the Sulie Estate has enjoyed by accepting the early retirement.  Although it need not make that inquiry here, the Court believes it unlikely that Plaintiff could prove such an imbalance as to make the enrichment unjust.

breach of contract to rise to the level of a UDTP claim, even if the breach is intentional).

{95} To recover on a UDTP claim, a plaintiff must prove that "(1) defendants committed an unfair or deceptive act or practice, (2) in or affecting commerce and (3) plaintiff was injured as a result." *Phelps-Dickson Builders, LLC v. Amerimann Partners*, 172 N.C. App. 427, 439, 617 S.E.2d 664, 671 (2005); *see also* N.C. Gen. Stat. § 75-1.1 (a). It is well-established that a UDTP claim is distinct from a breach of contract claim and that even an intentional breach is insufficient to sustain the action. *Eastover Ridge*, 139 N.C. App. at 367–68, 533 S.E.2d at, 832–33; *see also Bumpers v. Cmty. Bank of N. Va.*, 367 N.C. 81, 88, 747 S.E.2d 220, 226 (2013). A plaintiff must show substantial aggravating circumstances in order to recover on a UDTP claim when the basis of the claim is governed by a contract. *Eastover Ridge*, 139 N.C. App. at 367–68, 533 S.E.2d at 832–33; *Branch Banking & Trust Co. v. Thompson*, 107 N.C. App. 53, 62, 418 S.E.2d 694, 700 (1992). "Applicable aggravating circumstances include conduct of the breaching party that is deceptive." *Poor v. Hill*, 138 N.C. App. 19, 28, 530 S.E.2d 838, 845 (2000).

{96} Plaintiff offers no competent evidence supporting any finding of such substantial aggravating circumstances or actionable deception. James testified that he never spoke to anyone at SREMC about the discounting of the Sulie Estate's capital credits. The Court does not believe that the failure of the application used by SREMC supports a claim of actionable deception simply because the form did not include all facts regarding the retirement of the capital credits after discounting, such as the capital credit balances before and after discounting. Also, in the case of the Sulie Estate, the discount rate used was proper under SREMC's bylaws.

{97} In sum, the Court concludes that the Sulie Estate cannot proceed on its UDTP claim.

### 4. Breach of Contract

{98} SREMC contends that it fully complied with any contractual obligation owed to the Sulie Estate by payment of the deceased's capital credits to the Clerk of

Court in the proper amount using the proper discount rate, even if it did so upon James's application when he had no authority to request the payment.[9]  SREMC further contends that under these circumstances the Sulie Estate suffered no harm, because payment to the Clerk of Court served to release any possible claims on the full value of the Sulie Estate's capital credits.  Plaintiff responds by alleging that SREMC's failure to abide by Section 7.03 of the bylaws constitutes a breach of contract, and as a result, the Sulie Estate or its representative was not informed that discounted capital credit retirements are voluntary and the Sulie Estate could have chosen to not receive the credits until the end of the normal retirement cycle.

{99}    The elements of a claim for breach of contract are "(1) existence of a valid contract and (2) breach of the terms of that contract." *One Beacon Ins. Co. v. United Mech. Corp.*, 207 N.C. App. 483, 487, 700 S.E.2d 121, 124 (2010) (quoting *Ahmadi v. Triangle Rent A Car, Inc.*, 203 N.C. App. 360, 362, 691 S.E.2d 101, 103 (2010)).  Even if SREMC made the refund based on an unauthorized request and was technically in breach of its bylaws prior to the Clerk of Court's acceptance of the funds, any claim for such a breach was released by the Clerk of Court's acceptance of the amounts calculated using the proper discount rate demanded by the bylaws. Under North Carolina law, a payment by a debtor of an amount owed to the Clerk of Court acts as a full release to the debtor "for the payment so made."  N.C. Gen. Stat. § 28A-25-6 (2014).  Limited to the facts of this case, the Court believes that the release extends not only to the amount paid, but also to the amount withheld by SREMC as a result of discounting.

### 5.  Plaintiff's Reliance on the McLelland Estate

{100}  The Court further responds to Plaintiff's argument that a breach of contract to putative class members should be recognized from the manner in which SREMC refunded capital credits to the McLelland Estate.  McLelland died before the discounting program was implemented, but Plaintiff argues that similar other

---

[9] The Court notes but does not rely on evidence that James apparently consulted with and was assisted by the Clerk of Court before requesting that SREMC retire the deceased's capital credits.

decedents were treated differently. Plaintiff argues that the evidence should lead to an inference that SREMC intentionally covered up that the CEO had given the McLelland Estate an improper personal favor for "PR reasons," thus violating the covenant of good faith and fair dealing when giving the McLelland Estate, but not others, the benefit of a full refund without discounting.

{101} The Court believes the suggested inference is broader than the actual evidence justifies. Plaintiff is correct that, "[i]n every contract there is an implied covenant of good faith and fair dealing that neither party will do anything which injures the right of the other to receive the benefits of the agreement." *Bicycle Transit Auth., Inc. v. Bell*, 314 N.C. 219, 228, 333 S.E.2d 299, 305 (1985) (quoting *Harrison v. Cook*, 213 Cal.App.2d 527, 530 (1963)). However, the Court finds nothing actionable as a result of the McLelland Estate's receipt of a full refund of capital credits. The simple fact is that McLelland died prior to the effective date of SREMC's discounting program. The Court acknowledges that Plaintiff alleges that SREMC discounted capital credits for other estates involving decedents who died before this effective date. That does not, however, give rise to claims by those estates whose decedents died thereafter, including the Sulie Estate. The Court need not here decide whether decedents who died before the effective date of the discounting program have an actionable contract claim, and if so, whether any such claim is now time-barred.

{102} In sum, the Sulie Estate has no actionable claim for breach of contract based on the retirement of McLelland's credits.

## VII. CONCLUSION

{103} For the foregoing reasons, SREMC's Third Motion for Summary Judgment is GRANTED. Plaintiff's claims as administrator *de bonis non* of the Estates of Ellen Dudley Spell, Deceased, and Sulie Daniels Spell, Deceased are DISMISSED WITH PREJUDICE. As there are no remaining claims as to these estates, there is no remaining representative seeking to pursue further claims on behalf of a putative class. As such, the Court concludes that this action should be

DISMISSED WITH PREJUDICE and that this Opinion constitutes the FINAL JUDGMENT of the Court on all claims.

IT IS SO ORDERED, this 8th day of June 2015.


/s/ James L. Gale
James L. Gale
Chief Special Superior Court Judge
  for Complex Business Cases