ADA GRANSON WILLIAMS v. PILOT LIFE INSURANCE COMPANY

No. 35

(Filed 7 October 1975)

1. **Appeal and Error § 57; Trial § 58— review of findings of fact**
   The trial court's findings of fact in a nonjury trial have the force and effect of a verdict by a jury and are conclusive on appeal if there is evidence to support them, even though the evidence might sustain findings to the contrary.

2. **Trial § 58— findings by court — ultimate facts**
   The trial court in a nonjury trial is required to find and state the ultimate facts only and not the evidentiary facts. G.S. 1A-1, Rule 52(a)(1).

3. **Insurance § 50— accident policy — death from accidental bodily injury — sufficiency of court's findings**
   In an action to recover under a policy insuring against death occurring "solely as a direct result, and independent of all other causes, of accidental bodily injury," the trial judge found the ultimate facts sufficient to support his judgment for plaintiff when he found that insured died as a result of an accidental fall and that her death "was solely as a direct result thereof and independent of all other causes," since by so finding the judge rejected opposing inferences raised by defendant's evidence that the fall was not accidental and was caused by a preexisting disease or infirmity, i.e., an epileptic seizure.

APPEAL by defendant from decision of the Court of Appeals, 25 N.C. App. 505, 214 S.E. 2d 230 (1975), upholding judgment

of *Moore, J.,* 19 August 1974 Session, DURHAM County District Court.

Civil action to recover the sum of $5,000.00 allegedly due under the terms of a life insurance policy. By consent, the case was tried before Judge Moore without a jury.

On 12 March 1962 Pilot Life Insurance Company (Pilot) issued its Policy No. 3436384 wherein Doris Yvonne Ryals was the insured and plaintiff Ada Granson Williams was the beneficiary. Said policy was in full force and effect on 5 April 1973 when Doris Yvonne Ryals died under circumstances hereinafter set out. The policy provides that after it has been in effect for ten years Pilot will pay death benefits in the sum of $5,000.00 if the death of the insured occurs "solely as a direct result, and independent of all other causes, of accidental bodily injury" sustained while the policy is in effect.

Plaintiff's evidence tends to show that on the morning of 3 April 1973 Doris Yvonne Ryals was in her kitchen preparing pork chops for breakfast. The kitchen floor had been wet mopped five or ten minutes earlier by Mabel Louise Scott, who lived in the same house with Mrs. Ryals. Mabel Scott heard her say "oh" and ran downstairs where she found Mrs. Ryals stretched out on her back on the floor. She asked what happened, and Mrs. Ryals replied, "I slipped and fell." Mrs. Ryals got up unassisted, went to a chair, and said her head felt "like it's ready to burst." An ambulance was summoned and took Mrs. Ryals to Duke Hospital. Although apparently in great pain, she talked sensibly and coherently.

By deposition, Dr. David Rosenfield, employed at Duke Hospital by the Department of Neurology, stated that Mrs. Ryals died at the hospital at 5:15 p.m. on 5 April 1973. He said that members of Mrs. Ryals' family told him that she was standing in front of the refrigerator and all of a sudden fell "and started having movements." He said whoever the person was who furnished that information said "he or she was sitting next to the breakfast table and that the patient got up and went to the refrigerator and just stood there for a second or so after having opened the door and then fell and had the movements which we were discussing."

Dr. Rosenfield testified on cross-examination that, according to his notes, Doris Ryals denied having seizures on 3 April 1973 or at any other time. He said she was well oriented, knew

where she was, knew what year it was, and knew her name. Dr. Rosenfield said he did not know whether she had seizures or not. He further stated in his deposition that his notes indicated Mrs. Ryals was admitted at the Duke emergency room at 10:34 a.m.; that he saw her at 1:00 p.m. and she was unable at that time to carry on any kind of coherent conversation.

Plaintiff testified she had known Mrs. Ryals since she was three weeks old and never knew her to have seizures.

Plaintiff rested. Defendant's motion for dismissal under Rule 41(b) was denied.

Defendant offered the Duke Hospital medical records on Doris Yvonne Ryals showing, among other things, that she was admitted at 10:34 a.m. on 3 April 1973 with an entry "seizure and struck head." The history section of the records recites that Mrs. Ryals had an apparent seizure which was observed by her brother earlier that morning while patient was working with the stove "when she became stiff and fell down and struck her left occipital area on the floor." The hospital records further note that the "patient was well until this morning when she had this first seizure while cleaning a refrigerator. Observed by her brother. She then had a second seizure in the Duke emergency room." Included in the hospital report is a death summary which indicates that Mrs. Ryals had a history of chronic alcoholism and had been drinking heavily on the weekend prior to admission. "There is no previous history of seizures or head trauma."

In rebuttal, plaintiff offered the following from the deposition of Dr. Podell, Department of Psychiatry at Duke Medical Center: "There is no way that I could tell, based on my actual examination of this patient, whether or not she ever had a seizure prior to her admission to the hospital. . . . I personally did not obtain any information from her with respect to the cause of the fall."

Mabel Louise Scott was recalled and testified that Mrs. Ryals' brother might have been the one who gave the information contained in the Duke Hospital records concerning seizures. She stated, however, that decedent's brother was not present when the fall occurred. Rather, "he only came back to the house when we were going to the hospital and had alcohol on his breath and was staggering. He did not observe Doris at any time from the time she fell or immediately prior thereto. I

Williams v. Insurance Co.

don't know how he was telling these doctors that she had had a seizure because I know that she did not have a seizure."

The parties stipulated that Pilot's Policy No. 3436384 was in effect when the insured died on 5 April 1973 and that the sole issue to be determined is "whether or not insured . . . died solely as a direct result, and independent of all other causes, of accidental bodily injury, as set forth in the policy. . . ."

The trial judge found, *inter alia*, that:

1. The policy of insurance sued upon was issued by Pilot on 12 March 1962.

2. On 3 April 1973 the insured sustained an injury while in the kitchen of her home and was taken to Duke Hospital where she died on 5 April 1973.

3. Plaintiff was named as beneficiary in the policy and, since the policy had been in effect more than ten years, the amount, if any, to be paid for accidental death was $5,000.00.

4. "[T]he insured suffered an accidental fall in her home on April 3, 1973, and as a result of said fall died on April 5, 1973. That said death was solely as a direct result thereof and independent of all other causes, which resulted in accidental bodily injury and death of the insured, Doris Yvonne Ryals."

The trial judge thereupon entered judgment for $5,000.00 in favor of plaintiff with interest from 5 April 1973 until paid. On appeal, the Court of Appeals affirmed with Clark, J., dissenting. Defendant thereupon appealed to the Supreme Court as of right under G.S. 7A-30(2).

· *W. O. King and R. Hayes Hofler III, Attorneys for defendant appellant.*

*Richard N. Watson and Eugene C. Brooks, Attorneys for plaintiff appellee.*

HUSKINS, Justice.

The determinative question is whether the insured died solely as a direct result of *accidental bodily injury and independent of all other causes.* The trial judge made findings of fact and, upon those findings, answered the question affirmatively and entered judgment in favor of plaintiff. The Court of Appeals affirmed. Defendant contends the facts found are insufficient

to support the judgment and, on appeal to this Court, contends that the trial court's refusal to make findings of fact as to *the specific cause of the fall* (slipping on the floor, a seizure, or both) constitutes error requiring reversal or, in the alternative, remand for appropriate findings.

[1] The trial was by the judge without a jury. In that setting the court's findings of fact have the force and effect of a verdict by a jury and are conclusive on appeal if there is evidence to support them, even though the evidence might sustain findings to the contrary. *Knutton v. Cofield,* 273 N.C. 355, 160 S.E. 2d 29 (1968). The trial judge acts as both judge and jury and considers and weighs all the *competent* evidence before him. *Hodges v. Hodges,* 257 N.C. 774, 127 S.E. 2d 567 (1962). If different inferences may be drawn from the evidence, he determines which inferences shall be drawn and which shall be rejected. *Hodges v. Hodges, supra.* "There is no difference in this respect in the trial of an action upon the facts without a jury under Rule 52(a) (1) and a trial upon waiver of jury trial under former G.S. 1-185. Findings of fact made by the court which resolve conflicts in the evidence are binding on appellate courts." *Blackwell v. Butts,* 278 N.C. 615, 180 S.E. 2d 835 (1971).

[2] Under our former practice, when a jury trial was waived, former G.S. 1-185 required the trial judge: "(1) To find the facts on all issues of fact joined on the pleadings; (2) to declare the conclusions of law arising upon the facts found; and (3) to enter judgment accordingly. [Citations omitted.] In addition, he must state his findings of fact and conclusions of law separately. [Citation omitted.] The judge complies with this last requirement if he separates the findings and the conclusions in such a manner as to render them distinguishable, no matter how the separation is effected. [Citation omitted.] There are two kinds of facts: Ultimate facts, and evidentiary facts. Ultimate facts are the final facts required to establish the plaintiff's cause of action or the defendant's defense; and evidentiary facts are those subsidiary facts required to prove the ultimate facts. [Citations omitted.] G.S. 1-185 requires the trial judge to find and state the ultimate facts only." *Woodard v. Mordecai,* 234 N.C. 463, 67 S.E. 2d 639 (1951). These sound principles of law are just as applicable today in the trial of civil actions without a jury under Rule 52(a) (1) as formerly under G.S. 1-185.

[3]   The crucial finding of fact by the trial judge, the suffi-
ciency of which is controverted by defendant, reads as follows:
"That upon the hearing of the evidence, the Court further finds
as a fact that the insured suffered an accidental fall in her
home on April 3, 1973, and as a result of said fall died on April
5, 1973. That said death was solely as a direct result thereof and
independent of all other causes, which resulted in accidental
bodily injury and death of the insured, Doris Yvonne Ryals."
Defendant argues that the insured suffered a seizure which
caused the fall so as to constitute the seizure itself a cause of
her death. Thus defendant argues that death did not result
from accidental bodily injury *independent of all other causes*
and contends the findings of fact do not resolve the conflicts in
the evidence bearing on the disputed cause of death. Plaintiff,
on the other hand, contends that the facts found are the ultimate
facts and are sufficient to support the judgment.

Here, the trial judge acted in the dual capacity of judge and
jury. The evidence raised conflicting inferences of causation of
the insured's death. He weighed these conflicting inferences and
determined that the insured died as a result of an *accidental* fall
and that her death "was solely as a direct result thereof and
independent of all other causes. . . . " By so finding, the judge
rejected opposing inferences that the fall resulting in death was
*not accidental* and was caused by a preexisting disease or in-
firmity, *i.e.*, an epileptic seizure. The finding resolved the ulti-
mate issue, *Taney v. Brown*, 262 N.C. 438, 137 S.E. 2d 827
(1964), and that resolution is binding on appellate courts since
the evidence supports the findings and the findings support
the judgment. *Blackwell v. Butts, supra; Knutton v. Cofield,
supra,* and cases there cited.

Defendant relies on *Penn v. Insurance Co.*, 160 N.C. 399,
76 S.E. 262 (1912) ; *Harris v. Insurance Co.*, 193 N.C. 485, 137
S.E. 430 (1933) ; *Skillman v. Insurance Co.*, 258 N.C. 1, 127 S.E.
2d 789 (1962) ; *Horn v. Insurance Co.*, 265 N.C. 157, 143
S.E. 2d 70 (1965) ; and *Chesson v. Insurance Co.*, 268 N.C. 98,
150 S.E. 2d 40 (1966). We find nothing in any of these cases
at variance with the conclusion we have reached.

In *Penn* plaintiff sued on an accident policy for the loss
of an eye. The policy insured against "bodily injuries effected,
directly and independently of all other causes, through external,
accidental, and violent means." Plaintiff offered evidence tend-
ing to show that he lost the sight of his eye when he accidentally

fell from a train. There was also evidence that, at the time of the alleged injury, plaintiff had a cataract on that eye which would have eventually destroyed the sight. The conflicting evidence as to the cause of plaintiff's loss of his eyesight was submitted to the jury, the court charging that if the jury found by the greater weight of the evidence that plaintiff's loss of sight was caused directly and independently of all other causes, through external, accidental, and violent means, to answer for the plaintiff; but to answer for defendant if plaintiff's accident operated in connection with the old cataract to destroy the eye. Held: The charge was correct.

In *Harris* plaintiff sued on an accident insurance policy which covered injury resulting "directly and exclusively of all other causes from bodily injury sustained . . . solely through external, violent, and accidental means. . . . " Plaintiff's evidence tended to show that he had suffered a gunshot wound in his hip twenty years prior to taking out the policy but the wound had cured; that plaintiff accidentally fell in a stump hole and suffered serious injury disabling him to work. The leg had not bothered plaintiff in twenty years before the accident. About four weeks after the accident the wound began to run and pieces of bone came out. Defendant offered medical evidence tending to show that the old gunshot wound as well as the alleged fall into a stump hole combined to cause the trouble complained of. Held: The conflicting evidence on the question of causation carried the case to the jury.

In *Skillman* plaintiff sued to recover under a double indemnity clause in a policy of insurance which provided for double indemnity in case death of the insured "resulted directly and independently of all other causes from bodily injury inflicted solely through external and accidental means," and affirmatively provided that if an existing disease or illness contributed to the accident resulting in death, the insurer was not liable under the double indemnity clause. The evidence tended to show that insured was suffering from hypertension, and while driving his car along a straight highway ran off the road and into the river. There was expert testimony that insured died from a coronary occlusion and not from drowning. Held: The trial court correctly instructed the jury to the effect that if the disease was the cause of the accident or contributed to it the insurer would not be liable under the double indemnity clause.

Williams v. Insurance Co.

In *Horn* plaintiff sued under the supplementary provision of an insurance policy which provided for additional payments if death of the insured was caused directly and exclusively by external, violent and accidental means. The evidence showed that insured had theretofore suffered heart attacks and the doctor who performed the autopsy testified that the wounds received by insured in the accident were superficial and could not alone have caused death. Held: Nonsuit should have been entered.

In *Chesson* the policy in question provided for payment of a stated sum upon receipt of proof that the insured "has sustained bodily injury resulting in death within ninety days thereafter through external, violent, and accidental means, death being the direct result thereof and independent of all other causes. . . . " The policy contained a provision that the accident indemnity provision did not apply if death occurred "from disease or from bodily or mental infirmity in any form." There was evidence that insured had been repeatedly committed for acute alcoholism and resulting mental disorder during the prior year; that on the occasion in question he was standing in a corridor in a nervous condition, suddenly threw his arms and hands across his chest, jumped straight backward striking his head on the cement floor, and died of cerebral hemorrhage. Held: The evidence was insufficient to show that death resulted solely through violent, external and accidental means—if insured voluntarily jumped backward the fall was not through accidental means, and if he jumped backward as a result of hypertension, delirium tremens, or other mental or physical infirmity, the fall was not the sole cause of his death.

In the case before us there is plenary evidence to support the finding that the insured "suffered an accidental fall" and that her death was a direct result thereof, independent of all other causes. This finding supports the judgment. In light of the equivocal nature of the evidence concerning a seizure, the failure of the fact-finder to accept defendant's version is understandable.

For the reasons stated, the result reached by the Court of Appeals upholding the findings and judgment of the trial judge is

Affirmed.