An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA25-246

Filed 15 April 2026

Mecklenburg County, Nos. 19JA000432-590, 19JA000433-590

IN THE MATTER OF: L.H., L.H.

Appeal by Respondent-Mother from order entered 11 April 2024 by the Honorable C. Renee Little in Mecklenburg County District Court. Heard in the Court of Appeals 20 February 2026.

> *Mecklenburg County Attorney's Office, by Kristina A. Graham, for Mecklenburg County Department of Health and Human Services, Youth and Family Services.*
>
> *Womble Bond Dickinson (US) LLP, by John E. Pueschel and Jessica Gorczynski, for the Guardian ad Litem.*
>
> *David A. Perez for Respondent-Mother.*

CARPENTER, Judge.

Respondent-Mother appeals from the trial court's 11 April 2024 permanency planning order ("the Order") that placed her daughters, Louise and Linda (collectively, the "Juveniles"), in the care of their respective grandparents and

awarded Respondent-Mother supervised visitation.[1]  On appeal, Respondent-Mother argues the trial court's findings of fact and conclusions of law are unsupported. Respondent-Mother also attempts to challenge one or both guardianship orders entered that same day.  After careful review, we affirm the Order and dismiss Respondent-Mother's appeal from the guardianship orders.

## I.     Factual & Procedural Background

Mother gave birth to Louise in September 2015 and to Linda in June 2019.  In August 2019, the Mecklenburg County Department of Health and Human Services, Youth and Family Services ("YFS") received a report concerning domestic violence between Respondent-Mother and her boyfriend.  Later that month, Respondent-Mother was arrested for felony possession of cocaine and drug paraphernalia.

In September 2019, YFS referred Respondent-Mother to family in-home services and attempted to schedule child and family team meetings with Respondent-Mother to address domestic violence.  Respondent-Mother failed to attend four of the five scheduled meetings despite reminders and transportation assistance.

During this period, Respondent-Mother's housing was unstable.  Respondent-Mother reported the Juveniles were staying in hotels or with relatives.  On 15 October 2019, Respondent-Mother informed YFS she had no money for food or gas, no place to live, and she and the Juveniles had slept in a car the previous night.  In response,

---

[1] Pseudonyms are used to protect the identities of the minor children.  *See* N.C. R. App. P. 42(b) (2025).

YFS developed a safety plan whereby Respondent-Mother agreed to reside with a cousin. After Respondent-Mother took the Juveniles to reside with her cousin, YFS was unable to contact her for several days.

On 25 October 2019, Respondent-Mother again contacted YFS and reported she had no place to live and did not know what to do with the Juveniles. When a social worker met with the family, Louise appeared hungry and was wearing a soiled pull-up and ill-fitting shoes. In response, YFS arranged for the Juveniles to stay with Louise's paternal great-grandmother while Respondent-Mother went to retrieve a portable crib. Respondent-Mother returned empty-handed late that night and subsequently left again, not returning to the Juveniles until 28 October 2019.

On 29 October 2019, YFS held another child and family team meeting and developed a family services agreement with Respondent-Mother. After the meeting, Respondent-Mother drove the Juveniles back to Louise's paternal great-grandmother's home and abandoned them. Around this time, Respondent-Mother reportedly made statements to a family member about harming herself and seeking cocaine.

Respondent-Mother failed to meet with YFS or submit to a requested drug screen by 8 November 2019. On 15 November 2019, YFS filed juvenile petitions alleging the Juveniles were neglected and dependent. YFS also relocated the Juveniles to their maternal grandmother's home.

After a hearing, the trial court entered an order on 5 February 2020, adjudicating the Juveniles neglected and dependent and granting YFS nonsecure custody. In its disposition order entered 18 February 2020, the trial court permitted Respondent-Mother supervised visitation and identified Respondent-Mother's barriers to reunification, including substance abuse, domestic violence, housing instability, inappropriate care, and mental health concerns. In December 2020, Respondent-Mother moved to Georgia.

On 18 March 2021, YFS filed a petition to terminate Respondent-Mother's parental rights on the grounds of neglect, willful failure to make reasonable progress, willful failure to pay a portion of the cost of their care, and dependency.

The trial court conducted a permanency planning hearing on 30 April 2021. In its order entered 3 June 2021, the trial court found that Respondent-Mother was not making adequate progress under her plan, or actively cooperating or participating with her plan, YFS, or the guardian ad litem ("GAL"). The trial court established adoption as the primary permanency plan with guardianship and reunification as secondary plans. In June 2021, Respondent-Mother relocated from Georgia to Michigan.

On 12 April 2022, the trial court conducted a termination of parental rights hearing that Respondent-Mother did not attend. On 13 May 2022, the trial court entered an adjudication order finding the existence of all grounds alleged in the termination petition. The trial court scheduled a dispositional hearing on 20 May

2022. Instead of conducting the disposition hearing, however, the trial court continued to hold permanency planning hearings.

After nearly three years without visiting the Juveniles, Respondent-Mother got married in April 2023. On or about July 2023, Respondent-Mother began making Facetime calls to the Juveniles but would not speak, leaving the Juveniles to hang up on her. When Respondent-Mother contacted the Juveniles, her communication negatively impacted their behavior. Although Louise was managing outbursts and inappropriate behaviors at school, her teachers noted that those behaviors resurfaced after communication with Respondent-Mother. Louise's teacher noted in an email from November 2023, "when [Louise] has a visit, phone call or note from her mother, she becomes extremely dysregulated. . . . When told by Respondent-Mother that [Louise] may be living with her, [Louise's] behavior incidents increased."

On 4 August 2023, Linda was moved from her maternal grandmother's home and placed with her paternal grandparents. Although the Juveniles were separated, they had visits every other weekend at their maternal grandmother's home.

On 12 December 2023 and 9 February 2024, the trial court held another permanency planning hearing. Natalie Smith, the social worker, testified that Respondent-Mother: had not recently submitted to substance abuse screens; had not engaged in substance abuse treatment; had recently stopped using marijuana; had insufficient housing for a family of six; was unemployed and dependent on her

husband's disability income; and had only seen the Juveniles four times since abandoning them at Louise's paternal great grandmother's home in 2019.

Regarding the safety and well-being of the Juveniles, the GAL testified that both Juveniles were in safe, stable placements. The GAL also reported that the Juveniles were happy and thriving with their respective grandparents.

In the Order, the trial court found that Respondent-Mother: had only seen the Juveniles four times over five years; failed to address her substance abuse, mental health, and housing issues; had minimally participated and cooperated with the case plan; had not remained available to the trial court, YFS, or the GAL; and had acted in a manner inconsistent with the Juveniles' health and safety. The trial court placed the Juveniles in the guardianship of their respective grandparents and awarded Respondent-Mother supervised visitation. The trial court also entered two guardianship orders, one for Linda and one for Louise, on 11 April 2024.

On 17 April 2024, Respondent-Mother filed written notice of appeal from the Order.

## II. Jurisdiction

This Court has jurisdiction to review the Order under N.C. Gen. Stat. § 7B-1001(a)(4) (2025). As Respondent-Mother did not designate the guardianship orders in her notice of appeal or file a petition for writ of certiorari, the scope of our review is limited to the Order. *See* N.C. R. App. P. 3(d), 3.1(b) (2025).

## III. Issues

The issues are whether: (1) competent evidence supports the trial court's findings #10, 25, 26, and 30(c), (e), and (i); and (2) the findings support the trial court's conclusions of law 5, 6, and 7.

## IV. Analysis

### A. Standard of Review

" 'This Court reviews an order that ceases reunification efforts to determine whether the trial court made appropriate findings, whether the findings are based upon credible evidence, whether the findings of fact support the trial court's conclusions, and whether the trial court abused its discretion with respect to disposition.' " *In re M.T.*, 285 N.C. App. 305, 322, 877 S.E.2d 732, 746 (2022) (quoting *In re C.M.*, 273 N.C. App. 427, 429, 848 S.E.2d 749, 751 (2020)).

The trial court's findings of fact are "conclusive on appeal when supported by any competent evidence, even if evidence could sustain contrary findings." *In re C.M.,* 273 N.C. App. at 430, 848 S.E.2d at 752 (citation and internal quotation omitted). "Unchallenged findings of fact are binding on appeal." *In re K.W.*, 272 N.C. App. 487, 492, 846 S.E.2d 584, 588 (2020) (citation omitted). "[T]he trial court's decisions as to the weight and credibility of the evidence, and the inferences drawn from the evidence, are not subject to appellate review." *In re J.M.,* 384 N.C. 584, 591, 887 S.E.2d 823, 828 (2023) (citation and internal quotations omitted).

In reviewing the sufficiency of the trial court's findings, we distinguish between evidentiary findings and ultimate findings. *See Williams v. Pilot Life Ins.*

*Co.*, 288 N.C. 338, 342, 218 S.E.2d 368, 372 (1975) ("There are two kinds of facts: [u]ltimate facts[] and evidentiary facts."). "[E]videntiary facts are those subsidiary facts required to prove the ultimate facts." *Id.* at 342, 218 S.E.2d at 372. An ultimate finding "is a finding supported by other evidentiary facts reached by natural reasoning." *In re G.C.*, 384 N.C. 62, 65–66 n.3, 884 S.E.2d 658, 661–62 n.3 (2023) (citing *Woodard v. Mordecai*, 234 N.C. 463, 470, 472, 67 S.E.2d 639 (1951)). An ultimate finding is "conclusive on appeal if the evidentiary facts reasonably support the trial court's ultimate finding of fact." *Id.* at 65, 884 S.E.2d at 661 (quoting *State v. Fuller*, 376 N.C. 862, 864, 855 S.E.2d 260 (2021)).

**B. Sufficiency of the Findings**

Respondent-Mother challenges the sufficiency of the trial court's evidentiary findings #10, 25, and 26, and the sufficiency of its ultimate finding #30(c), (e), and (i). We consider them in turn.

**1. Evidentiary Findings**

Finding #10, in which the trial court found that Respondent-Mother "has not ameliorated the conditions which led to the juveniles entering YFS custody," "has not satisfactorily completed her case plan for reunification," and "has untreated mental health and substance use issues" is supported by competent evidence. *See In re C.M.,* 273 N.C. App. at 430, 848 S.E.2d at 752.

Since 2020, a large portion of Respondent-Mother's plan required her to remedy her substance abuse, mental health, housing, and income issues. As of the

permanency planning hearing in 2024, however, Respondent-Mother had not fully engaged in mental health treatment, had only recently stopped using marijuana, did not enroll in domestic violence services until the final year of permanency planning hearings, failed to complete her parenting class, and failed to acquire sufficient income and housing. Rather than addressing her barriers to reunification, Respondent-Mother left North Carolina and failed to regularly communicate with the Juveniles, the trial court, the GAL, and YFS. Thus, competent evidence supports Finding #10. *See id.* at 430, 848 S.E.2d at 752.

Finding #25, in which the trial court found that Respondent-Mother had not made adequate progress over the life of the case, had insufficient income to meet the Juvenile's needs, and acted contrary to her rights as a parent is supported by competent evidence. *See id.* at 430, 848 S.E.2d at 752. The record reflects that Respondent-Mother did not make adequate progress over the life of the case: Respondent-Mother minimized her mental health and substance abuse issues; she was unemployed and did not have adequate income to support the Juveniles; her housing was inadequate to support a family of six; she moved out of state and went nearly three years without visiting the Juveniles; and when Respondent-Mother did contact the Juveniles, her communication negatively impacted their behavior. Thus, competent evidence supports Finding #25. *See id.* at 430, 848 S.E.2d at 752.

Finding #26, in which the trial court found that "it would be contrary to the best interest" of the Juveniles to "disrupt the safety and continuity of the placement"

with their respective grandparents, is also supported by competent evidence. *See id.* at 430, 848 S.E.2d at 752. Respondent-Mother abandoned the Juveniles to the care of their respective grandparents for nearly five years, only visited them four times, and moved to other states without them. In Respondent-Mother's absence, the Juveniles bonded with their respective grandparents, who were their caretakers. The GAL and a social worker reported the Juveniles were thriving in their placements. And Respondent-Mother made little progress with her substance abuse, mental health, housing, and income issues. Thus, competent evidence supports Finding #26. *See id.* at 430, 848 S.E.2d at 752.

In sum, the challenged evidentiary Findings #10, 25, 26 are supported by competent evidence. *See id.* at 430, 848 S.E.2d at 752.

### 2. Ultimate Findings

At any permanency planning hearing, "[r]eunification shall be a primary or secondary plan," unless the court makes written findings that "reunification efforts clearly would be unsuccessful or would be inconsistent with the juvenile's health or safety." N.C. Gen. Stat. § 7B-906.2(b) (2025). These findings "may be made at any permanency planning hearing, and if made, shall eliminate reunification as a plan." *Id.* The trial court must make written findings as to each of the following, demonstrating the degree of success or failure toward reunification:

> (1) Whether the parent is making adequate progress within a reasonable period of time under the plan.

>  (2) Whether the parent is actively participating in or cooperating with the plan, the department, and the guardian ad litem for the juvenile.
>
>  (3) Whether the parent remains available to the court, the department, and the guardian ad litem for the juvenile.
>
>  (4) Whether the parent is acting in a manner inconsistent with the health or safety of the juvenile.

*Id.* § 7B-906.2(d).

Finding #30(c) is an ultimate finding that Respondent-Mother was "not making adequate progress within a reasonable time . . . ." *See In re G.C.*, 384 N.C. at 65–66 n.3, 884 S.E.2d at 661–62 n.3. Evidentiary findings support this ultimate finding. *See id.* at 65–66 n.3, 884 S.E.2d at 661–62 n.3. Finding #15 shows that Respondent-Mother's issues in 2020 included domestic violence, housing instability, homelessness, and mental health and substance abuse concerns. Finding #18 reflects that, since 2020, Respondent-Mother "consistently minimized" her trauma, had not yet grappled with her mental health issues, and she had recently stopped using marijuana. Finding #27 establishes that the "[Juveniles] have been in YFS custody since [15 November 2019], and they deserve permanence." And finding #10 indicates that Respondent-Mother had not ameliorated the conditions leading to the Juveniles' removal, had not completed her case plan, and she had untreated mental health and substance use issues. Together, these evidentiary findings support the trial court's ultimate finding that Respondent-Mother had not made adequate progress in a reasonable time on her case plan. *See id.* at 65–66 n.3, 884 S.E.2d at 661–62 n.3.

Because this ultimate finding is supported by evidentiary findings, it is conclusive on appeal. *See id.* at 65, 884 S.E.2d at 661.

Finding #30(e) is an ultimate finding that Respondent-Mother minimally participated and cooperated with her plan, YFS, and the GAL. *See In re G.C.*, 384 N.C. at 65–66 n.3, 884 S.E.2d at 661–62 n.3. Evidentiary findings support this ultimate finding. *See id.* at 65–66 n.3, 884 S.E.2d at 661–62 n.3. Finding #15 reflects that the Juveniles were adjudicated neglected and dependent on 17 January 2020. Findings #17 and 18 establish that the trial court adjudicated that grounds existed to terminate Respondent-Mother's parental rights in April 2022. After nearly five years, Respondent-Mother had not remedied her mental health or substance abuse issues. Finding #19 shows that Respondent-Mother only saw the Juveniles four times over five years. And Finding #20 indicates that Respondent-Mother moved out of state and went long periods without making herself available to the trial court, the GAL, YFS, or the Juveniles. Together, these findings support the trial court's ultimate finding that Respondent-Mother minimally participated and cooperated with her plan, YFS, and the GAL. *See id.* at 65–66 n.3, 884 S.E.2d at 661–62 n.3. Because this ultimate finding is supported by evidentiary findings, it is conclusive on appeal. *See id.* at 65, 884 S.E.2d at 661.

Finding #30(i) is an ultimate finding that Respondent-Mother acted in a manner inconsistent with the health or safety of the Juveniles. *See In re G.C.*, 384 N.C. at 65–66 n.3, 884 S.E.2d at 661–62 n.3. Evidentiary findings support this

ultimate finding. *See id.* at 65–66 n.3, 884 S.E.2d at 661–62 n.3. In addition to the aforementioned Findings #19 and 20, Finding #18 reflects that although Respondent-Mother had several years to improve, she had not remedied her mental health or substance abuse issues. Together, these findings support the trial court's ultimate finding that Respondent-Mother acted in a manner inconsistent with the health or safety of the Juveniles. *See id.* at 65–66 n.3, 884 S.E.2d at 661–62 n.3. Because this ultimate finding is supported by evidentiary findings, it is conclusive on appeal. *See id.* at 65, 884 S.E.2d at 661.

In sum, the challenged portions of Finding #30 are supported by the trial court's evidentiary findings and are conclusive on appeal. *See id.* at 65, 884 S.E.2d at 661.

## C. Conclusions of Law

Respondent-Mother also argues that the trial court's conclusions of law 5, 6, and 7 are unsupported by the findings of fact. We disagree.

Conclusions 5 and 6, in which the trial court concluded that returning the Juveniles to Respondent-Mother's care would be contrary to their welfare, health, and safety and guardianships with their grandparents was in their best interests, are supported by the findings. *See In re M.T.*, 285 N.C. App. at 322, 877 S.E.2d at 746. The findings show that Respondent-Mother failed to address her mental health and substance abuse issues, housing instability, and inadequate income, and that, due to her failure to ameliorate those conditions, the Juveniles have remained in the care of

their respective grandparents—who are suitable and appropriate guardians—since 2019. Accordingly, the findings support conclusions 5 and 6. *See id.* at 322, 877 S.E.2d at 746.

Conclusion 7, in which the trial court concluded that Respondent-Mother acted "inconsistently with [her] constitutional rights as a parent" is likewise supported by the findings. *See id.* at 322, 877 S.E.2d at 746. The findings reflect that Respondent-Mother moved out of state and made herself unavailable to the trial court, the GAL, YFS, and the Juveniles, visiting the Juveniles only four times over five years. During that time, the Juveniles bonded with their respective grandparents, who provided care and supervision in Respondent-Mother's absence. Accordingly, conclusion 7 is supported by the findings. *See id.* at 322, 877 S.E.2d at 746.

In sum, the challenged conclusions of law are supported by the findings. *See id.* at 322, 877 S.E.2d at 746.

## V. Conclusion

Because competent evidence supports the challenged findings and the trial court's findings support its conclusions of law, we affirm the Order.

AFFIRMED.

Judges COLLINS and STADING CONCUR.

Report per Rule 30(e).

- 14 -